IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| GLORIA TUPPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-5062-CV-SW-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION REVERSING AND REMANDING FINAL DECISION**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability application. The Commissioner's decision is reversed and remanded.

I. BACKGROUND

Plaintiff is a 52-year-old female who alleges she became disabled on April 11, 2007. The ALJ found Plaintiff suffered from the following severe impairments: major depressive disorder, social phobia, chronic obstructive pulmonary disorder, and degenerative disc disease (DDD) of the lumbar spine. The ALJ concluded Plaintiff was not disabled after finding she retained the residual functional capacity (RFC) to perform other work existing in the national economy.

II. DISCUSSION

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a conclusion. *Id.* Evidence that both supports and detracts from the ALJ's

decision must be considered. *Id.* If two inconsistent positions can be drawn from the evidence, and one of those positions represents the ALJ's decision, it will be affirmed. *Id.*

Plaintiff argues the ALJ erred in assessing her RFC.

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8P, 1996 WL 374184 (S.S.A.)

The ALJ found Plaintiff retained the physical RFC to, among other things, lift 20 pounds occasionally and 10 pounds frequently. There is insufficient evidence in the record to support this finding. The only direct evidence of Plaintiff's lifting ability is her testimony that she could not lift her 30-pound granddaughter and could "barely" lift her daughter's 12 or 14-pound Chihuahua. The Court acknowledges the ALJ discredited Plaintiff's physical allegations for several reasons, but none of these reasons justify the lifting abilities the ALJ found Plaintiff retained.

First, the ALJ found that Plaintiff's allegations of pain and discomfort secondary to her DDD were not supported by the medical evidence. This finding in itself is supported by substantial evidence in the record as whole: medical imaging of Plaintiff's lumbar spine revealed no serious abnormalities, and her doctor recommended only conservative treatment. "However, allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7P, 1996 WL 374186 (S.S.A.)

Plaintiff's daily activities of babysitting her grandchildren and decorating her home during the holidays were also cited by the ALJ as discrediting Plaintiff's testimony. While these activities suggest Plaintiff can do some work activities, they are not adequate – even in conjunction with the absence of medical evidence discussed above – to reasonably support the conclusion Plaintiff can lift up to 20 pounds occasionally or 10 pounds frequently.

The ALJ also discredited Plaintiff's physical allegations because she had unsuccessfully sought employment after applying for disability. The Court acknowledges "this record of contemplating work indicates [Plaintiff] did not view [her] pain as disabling." *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) (citation omitted). And if Plaintiff had sought employment that required lifting up to 20 pounds, that would seriously undermine her allegation she could barely lift a 12-to-14-pound dog. But Plaintiff sought restaurant work as a cashier or hostess. While the occupation of cashier might be categorized as light work (requiring occasional lifting of 20 pounds) as it is generally performed (*see* DICOT 211.462-010, cashier II), nothing establishes Plaintiff ever contemplated lifting this amount of weight while running a cash register or working as a hostess.

Lastly, the ALJ discredited Plaintiff's physical allegations based on the ALJ's finding she missed three appointments with her primary care physician, David G. Mook, MD. The ALJ's finding of missed appointments is supported by a termination letter from Dr. Mook to Plaintiff dated July 28, 2009. But this letter alone did not allow the ALJ to discredit Plaintiff:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment *without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.*

SSR 96-7P (emphasis added). The ALJ never asked Plaintiff for an explanation with respect to Dr. Mook. This is significant because, after she received Dr. Mook's letter, Plaintiff reported to her community support worker (CSW) that *she had only rescheduled an appointment once*, *Dr. Mook's office was responsible for the other two cancellations*. Thus, the ALJ should not have relied solely on Dr. Mook's termination letter to discredit Plaintiff. The ALJ's findings with respect to Plaintiff's credibility and, consequently, her physical RFC are not supported by substantial evidence in the record as a whole.

With respect to Plaintiff's mental RFC, the ALJ determined Plaintiff could perform

"simple, unskilled work, with no contact with the general public due to symptoms associated with her mental impairments, which include irritability and panic attacks." The Court has reviewed the entire record consisting of almost 1,000 pages and concludes the ALJ's finding is not supported by sufficient evidence.

After a week-long stay in a psychiatric inpatient unit in December 2006 for depression and anxiety, Plaintiff began receiving frequent and consistent visits from a CSW through Ozark Center, which also provided her necessary housing assistance.[1] From that time forward, Plaintiff's CSW assisted her in many significant ways: the CSW helped Plaintiff obtain necessary community resources and organize her bills; the CSW checked Plaintiff's medication compliance and refills, and assisted her when she was unsure whether she had missed a dose; the CSW often drove her to the pharmacy and doctor appointments; the CSW set up appointments with new doctors, and attended some appointments with her; and the CSW aided her in completing applications for assistance and other paperwork.

*With this assistance from Ozark Center*, Plaintiff's ability to function improved, especially after March 2007 when a cardiologist confirmed that Plaintiff's somatic complaints (chest pains) were related to her depression and anxiety, not a heart condition. But even during this period of improvement, Plaintiff consistently reported that she experienced extreme anxiety when going out in public, and that never changed.[2]

Plaintiff's overall mental functioning markedly deteriorated after she received Dr. Mook's termination letter (in July 2009). Before that, Plaintiff had expressed to her CSW great relief that she had started seeing Dr. Mook (in October 2008). She believed he was very diligent in treating her numerous physical complaints. Notably, Plaintiff's

---

[1] Ozark Center is the behavioral health division of Freemen Health System, where Plaintiff completed her inpatient psychiatric stay. Ozark Center (last visited February 8, 2012), http://www.freemanhealth.com/ozarkcenter.

[2] When asked at the hearing why she could not work, Plaintiff testified: "Concentration, my depression, I have a total lack of concentration. Anxiety and panic attacks. I don't function well in public at all; I get really, really nervous, and make myself sick literally, if I'm around a lot of people, and noise. Basically my concentration, being able to function."

CSW had helped Plaintiff find and set up the appointment with Dr. Mook, and Plaintiff "was so happy and grateful." After receiving Dr. Mook's letter, Plaintiff never returned to the level of mental functioning she had experienced beginning March 2007.

Two consultative psychologists who examined Plaintiff in connection with her eligibility for state assistance opined Plaintiff was severely limited in her mental abilities. The ALJ assigned these opinions little weight, finding they were based on Plaintiff's subjective complaints, and were inconsistent with the medical evidence and Plaintiff's daily activities. But these opinions were not based *solely* on Plaintiff's subjective complaints: both psychologists administered the Personality Assessment Inventory (PAI) and believed Plaintiff's profile was valid.

As for inconsistency with the medical evidence, the overwhelming bulk of the evidence cited by the ALJ occurred during Plaintiff's admittedly-lengthy window of improvement *when Plaintiff was receiving substantial assistance from Ozark Center*. The only evidence the ALJ cited from after that window of time was a note from Plaintiff's nurse practitioner dated February 11, 2010, that Plaintiff was "fairly stable on meds." But the ALJ did *not* note Plaintiff had also reported to her nurse practitioner that she had recently experienced "severe anxiety" while shopping at a crowded Wal-Mart. The ALJ also did not note that Plaintiff's CSW sat in on the appointment with her; the CSW had been asked to do so because Plaintiff was "nervous" about seeing the nurse practitioner, something she had been reporting since at least October 2009.

And with respect to Plaintiff's daily activities, the fact Plaintiff babysat her grandchildren establishes Plaintiff was capable of some mental stress in a home setting. However, neither it nor any of her other activities establish anything with respect to her ability to function out in the public, particularly given that she consistently reported severe anxiety in this area.

The Court further does not consider the ALJ's RFC limitation of "no contact with the general public" sufficient to account for Plaintiff's social phobia. The jobs identified by the VE (*e.g.*, DICOT 706.684-042, bench assembler) may not have job duties requiring contact with clients or customers, but they almost certainly require contact with coworkers and supervisors, who are members of the public. And the fact that Plaintiff attempted to find work – without more – does not prove she is mentally capable of

performing sustained work activities in an ordinary work setting on a regular and continuing basis.

### III.  CONCLUSION

The Commissioner's final decision is reversed and remanded.  On remand, the ALJ shall reevaluate Plaintiff's physical RFC, giving explicit consideration to Plaintiff's version of events regarding Dr. Mook's termination of their relationship.  The ALJ also should reevaluate Plaintiff's lifting ability and explicitly state the evidence that establishes whatever lifting abilities the ALJ finds Plaintiff to retain.  With respect to Plaintiff's mental RFC, the ALJ shall order a consultative psychological examination of Plaintiff for the purpose of obtaining a medical opinion of Plaintiff's ability to perform on a sustained basis work-related mental activities, particularly those requiring social contact, such as responding appropriately to supervision, co-workers and work situations.  The ALJ shall require the consultative examiner to base his or her opinion not only on a mental status examination (which should include appropriate clinical testing), but also the *entire* medical record, particularly the abundant notes authored by Plaintiff's CSW at Ozark Center.
IT IS SO ORDERED.


DATE: February 13, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT